904 F.2d 708
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bennett STEWART, Plaintiff-Appellant,
v.
Louis SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-6242.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1990.
 
 Before NATHANIEL R. JONES and BOGGS, Circuit Judges, and BARBARA K. HACKETT, District Judge.*
 PER CURIAM.
 
 
 1
 Claimant Bennett Stewart appeals from the district court's affirmance of the Secretary's denial of benefits. Finding that this denial is supported by substantial evidence on the record as a whole, we affirm.
 
 
 2
 * Stewart was born in 1943, and has a seventh-grade education. He worked as a coal miner until March 1987, at which time he suffered a work injury which affected his back and hips. He was hospitalized for this injury, and complained of pain in both hips, his lower back, and his left leg.
 
 
 3
 He was treated at the hospital and for a short time after discharge by Dr. K.K. Raju, an orthopedic surgeon. Dr. Raju diagnosed lumbosacral strain and contusion of both hips and pelvis; he prescribed pain medication and physical therapy for Stewart.
 
 
 4
 In May 1987, Stewart's insurance company referred him to Dr. William Brooks, a neurosurgeon. Dr. Brooks noted Stewart's complaints of pain, but also noted that he had been given no aggressive therapy for this pain. Dr. Brooks stated that Stewart's back pain "continues to be incapacitating and he is unable to work at the present time." In June, Stewart was hospitalized for intensive physical therapy and further study.
 
 
 5
 In August 1987, Dr. Brooks released Stewart from his care, and imposed a 35-50 pound restriction on repetitive lifting, as well as a general recommendation against more than minimal lifting, twisting, bending, or stooping. Dr. Brooks opined that Stewart had a musculoligamentous strain superimposed on degenerative osteoarthritis and that he had a 5% partial impairment to his body as a whole.
 
 
 6
 Stewart filed an application for disability insurance benefits on August 19, 1987, claiming that he had become disabled in March. He complained of back problems and shortness of breath. On August 25, Dr. Frank Varney performed an occupational pulmonary disease examination on Stewart; Stewart said that he had smoked cigarettes for the last twenty years. Dr. Varney noted scattered rhonci throughout Stewart's lung fields and early clubbing of his nails. Dr. Varney interpreted a chest x-ray as compatible with a diagnosis of coal workers' pneumoconiosis 2/1 with resultant pulmonary dysfunction.
 
 
 7
 Stewart's claim for disability benefits was denied on September 8, 1987, and Stewart requested a hearing before an ALJ. On November 10, 1987, Dr. Terry Wright examined Stewart for complaints of dyspnea. He diagnosed coal workers' pneumoconiosis 1/0. Dr. Wright stated that Stewart was totally and permanently disabled from working in the coal mining industry or any dusty environment due to pneumoconiosis.
 
 
 8
 Dr. John Myers examined Stewart in March 1988, and diagnosed pneumoconiosis and chronic obstructive pulmonary disease, manifested by mild restrictive ventilation defect with significant impairment of air exchange. He indicated that Stewart had a restricted range of motion in his back, but that his neurological examination was essentially normal. Dr. Myers felt that arduous manual labor would not be in Stewart's best interest.
 
 
 9
 A hearing was held before an ALJ on March 22, 1988. The ALJ found that Stewart had severe impairments of back injury and pneumoconiosis, but that such impairments did not meet the listed impairments. Stewart could not perform his past relevant work as a coal miner.
 
 
 10
 Apparently after the hearing, the ALJ sent a questionnaire to Dr. Julian M. Nadolsky, Ed.D., a vocational expert, and made Stewart's file available to him. Dr. Nadolsky was asked to assume that Stewart had injured his back, and continued to experience pain and discomfort without any permanent relief to his symptomology. He was also asked to assume that Stewart could not bend, stoop, climb, squat, or work without alternatively sitting or standing, and that Stewart could not lift more than ten pounds, or five pounds repeatedly. Dr. Nadolsky was also asked to assume that Stewart required a work place free of pulmonary pollutants and noxious fumes and gases.
 
 
 11
 Based on this information, Dr. Nadolsky opined that Stewart could perform several entry level or unskilled sedentary jobs, including lock assembler, electronic component assembler, or thermostat inspector. Dr. Nadolsky stated that approximately 400,000 of these jobs existed in the national economy, with 125 in Stewart's local geographical area. According to the record, Dr. Nadolsky did not state what this geographical area included. The ALJ concluded, based on Dr. Nadolsky's report, that Stewart was capable of performing a significant number of unskilled sedentary jobs and was therefore not disabled.
 
 
 12
 Stewart requested review by the Appeals Council, and submitted two additional pieces of evidence. First, Stewart submitted the results of a orthopedic examination performed on him by Dr. Joseph Rapier on December 11, 1987. In this examination, Dr. Rapier found no definite evidence of sensory, motor, or reflex abnormalities. He opined that Stewart's functional impairment was 17%, half of which was due to the "dormant non disabling condition" of degenerative changes of the lower back at the time of the accident, and the remainder due to the accident. He did not indicate that Stewart was disabled.
 
 
 13
 Stewart also submitted a letter from Dr. K.D. Gibson. Dr. Gibson indicated that he had treated Stewart since October 1987, but provided no treatment notes. He submitted an admissions summary dictated by him from a hospital stay Stewart apparently underwent in August 1988. This summary indicated lumbosacral tenderness and spasm with decreased range of motion in Stewart's lumbar spine. In his letter, Dr. Gibson opined that Stewart was functionally disabled for gainful employment, but did not provide treatment reports or notes which would evidence a treating relationship.
 
 
 14
 Since Dr. Gibson was the only physician who indicated that Stewart was totally disabled, the Appeals Council refused to change the ALJ's denial of benefits. The decision of the ALJ thus became the decision of the Secretary. Stewart appealed to the district court, which affirmed the Secretary's decision, and then timely appealed to this court.
 
 II
 
 15
 Stewart makes two arguments on appeal. First, he states that the Secretary erred in not finding him disabled by reason of his pain. However, we find it clear that the Secretary's failure to find him disabled by reason of pain is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971). Pain, standing alone, does not constitute a disability unless it is of such severity that it prevents the claimant from participating in substantial, gainful activity. Bradley v. Secretary of Health and Human Services, 862 F.2d 1224, 1227 (6th Cir.1988).
 
 
 16
 In this case, the Secretary found some of Stewart's complaints of pain to be credible. However, the Secretary did not find that the pain was disabling. This finding is supported by substantial medical evidence on the record. Indeed, only Dr. Gibson indicated that Stewart was disabled, and Dr. Gibson provided sparse documentation. The other physicians who treated Stewart, and provided more complete documentation, indicated that he suffered some limitations, but did not indicate that he was disabled. The ALJ considered Stewart's pain in posing questions to the vocational expert concerning limitations on Stewart's ability to work.
 
 
 17
 On appeal, Stewart also argues that he does not retain the functional capacity to perform a significant number of jobs in the national economy. The vocational expert found that Stewart retained the residual functional capacity to perform 400,000 jobs in the national economy, or 125 jobs in his local geographical area. The Secretary thus found that Stewart retained the functional capacity to perform a significant number of jobs existing in the national economy. 42 U.S.C. Sec. 423(d)(2)(A).
 
 
 18
 We agree with the Secretary's determination that 400,000 jobs constitutes a significant number in the national economy. However, we note that jobs "existing in the national economy" do not include "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s]...." 20 C.F.R. Sec. 404.1566(b). Stewart argues that the fact that only 125 relevant jobs exist in his local geographical area demonstrates that the jobs identified by Dr. Nadolsky are limited and isolated. We disagree.
 
 
 19
 We have stated that "it is immaterial that [the number of relevant jobs] is a small percentage of the total number of jobs in a given area." Hall v. Bowen, 837 F.2d 272, 275 (6th Cir.1988). Instead, in determining whether the jobs identified are limited and isolated, the factors to be considered include:
 
 
 20
 the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.
 
 
 21
 Ibid. We must give deference to the Secretary's application of these criteria. Ibid.
 
 
 22
 Given these criteria, we cannot say that the Secretary erred in determining that Stewart retained the residual functional capacity to perform work in the national economy. Dr. Nadolsky accounted for Stewart's limitations, and listed a number of jobs which Stewart could perform, such as Lock Assembler, Electronics Component Assembler, and Condenser Aligner. Dr. Nadolsky's specificity lends credence to his opinion. See Hall, 837 F.2d at 274 (The court approvingly notes that "[h]ere the expert testified without qualification that there were jobs whose duties the plaintiff could perform and he listed some of them").
 
 
 23
 We are not troubled by the seemingly low percentage of relevant jobs in Stewart's local geographical area. Although neither Nadolsky nor the ALJ state what Stewart's local geographical area is, Stewart claims that it is Pike and Floyd Counties, Kentucky. We note that the population of Pike and Floyd Counties is approximately 130,000. THE WORLD ALMANAC AND BOOK OF FACTS 1990 598 (M. Hoffman ed. 1989). The number of jobs available in this area would be substantially less than 130,000.
 
 
 24
 Given the total number of jobs available in Floyd and Pike Counties, we hold that 125 relevant jobs can be a significant number of jobs in that region. This court has upheld a denial of benefits where the claimant could perform only .25% to .33% of the jobs available in his local geographical area, Hall, 827 F.2d at 276, a percentage similar to that at issue in this case. Certainly, 400,000 jobs, with no indication of gross concentration in a few areas, is a significant number of jobs in the national economy. Accordingly, the decision of the district court affirming the Secretary's denial of benefits is affirmed.
 
 
 
 *
 The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation