**Richard ROBY, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 01–3385.

United States Court of Appeals, Sixth Circuit.

Oct. 2, 2002.

Before GUY and BATCHELDER, Circuit Judges; and QUIST, District Judge.*

PER CURIAM.

Plaintiff, Richard Roby, appeals the denial of Social Security disability insurance benefits. 42 U.S.C. §§ 416(i) and 423(d). Plaintiff argues that the decision of the

---

* The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

administrative law judge (ALJ) is not supported by substantial evidence. He also challenges the constitutionality of 20 C.F.R. § 404.1513(e) on due process and equal protection grounds. After review of the arguments, the record, and the applicable law, we affirm.

I.

Roby was born September 23, 1951, and completed the seventh grade. He has trouble reading and writing. He worked as a belt cleaner and general laborer in the coal mining industry and as a skid operator and log truck operator in the timber industry. Roby was injured on August 22, 1995, when he hit his head on a beam and compressed his neck. He testified that he experienced pain in his neck and left shoulder; got dizzy if he bent over; and could not climb, crouch, or crawl. He could not lift anything after the first month, and he also had problems gripping objects. He had difficulty turning his head. Roby said that he kneels every 20 to 30 minutes for 10 to 20 minutes at a time. Roby's wife testified that he was very irritable and could not be around noise or people because of his pain. He had to take Tylenol. Linda Roby also testified that Roby had to kneel every half hour for ten minutes at a time. She said that he experienced dizziness and dropped things frequently. On June 6, 1997, Roby returned to a job shoveling coal.

Roby received chiropractic treatment from Dr. John D. Bashline. Dr. Bashline diagnosed Roby as having cervical sprain/strain and cervical myofascitis.

On December 18, 1995, Dr. Michael J. Somple, a physician, performed a disability evaluation. He diagnosed cervical sprain and strain. Dr. Somple found herniation in the disc at C4–C5. Dr. Somple opined that Roby could perform work involving lifting no more than 25 pounds.

On June 18, 1996, Dr. Nicholas Varrati, who specializes in occupational medicine, performed a disability evaluation. He found disc herniation at C4–C5, and opined that Roby could perform frequent lifting and carrying of weights up to ten pounds.

Dr. Amirk S. Chattha, a physician, performed a consultative evaluation at the request of Dr. Bashline. On July 23, 1996, Dr. Chattha observed neck pain and limited and painful movement of the left shoulder. An MRI scan revealed minor abnormalities. Dr. Chattha found a small central and left paracentral disc herniation at C4–C5 and a bulging disc at C5–C6. X-rays of the left shoulder on August 15, 1996, were negative. On September 20, 1996, Dr. Chattha found that Roby was experiencing neck and shoulder pain. There were no sensory changes, no muscle spasms, and no reflex abnormalities. Dr. Chattha found that Roby could use his hands for fine and gross manipulation. There was no evidence of atrophy or radiculopathy associated with the cervical pain.

On August 16, 1996, Dr. David A. Rath executed a residual functional capacity evaluation indicating that Roby could frequently lift and carry up to ten pounds and occasionally lift and carry up to 20 pounds. He could stand/walk for six hours each during an eight-hour work day. He could sit for six hours. Dr. Rath opined that Roby retained an unlimited ability to push and pull.

On October 10, 1996, a myelogram and CT-scan of the cervical spine showed a small posterior protrusion at C4–C5 with minimal neural impingement. The CT-scan was normal.

On March 18, 1997, Dr. Albert J. Camma, a neurosurgeon, performed a consultative examination for Dr. Bashline. Dr. Camma reported that Roby had full range

of motion in the cervical spine except that he had lateral rotation to only about 10 to 15 degrees. Roby reported pain on extension, lateral bending, and lateral rotation. The neurologic exam was negative. Dr. Camma concluded that the pain was secondary to a herniated disc at C4–C5.

Roby filed an application for disability insurance benefits on July 31, 1996, alleging that he became disabled on August 24, 1995, by impairments to his neck, left arm, and shoulder. The application was denied initially and upon reconsideration. On January 18, 1998, at a hearing before the ALJ, Roby requested that his application be amended to seek a closed period of disability from August 24, 1995 to June 6, 1997 (the date he returned to a heavy-lifting job).

During the hearing, the ALJ asked a vocational expert, Frances Kenley, what jobs would be available to a hypothetical individual who was limited to unskilled work involving simple one- or two-step operations and no reading, writing, or mathematics. The individual could not crawl, crouch, climb, squat, or kneel. He could not perform any reaching or other work activity above shoulder level and required a job with a sit/stand option. The vocational expert testified that such a hypothetical individual could perform in the state region 5,000 collector, ticket taker, and cashier jobs; 2,000 assembler jobs; and 100 mail clerk jobs.

On April 15, 1998, the ALJ issued a decision finding that Roby was not disabled during the closed period. The ALJ concluded that while Roby could not have performed any part of his past work during the closed period, he could have performed other jobs existing in significant numbers in the economy. On January 15, 2000, the Appeals Council denied Roby's request for review and adopted the ALJ's decision as the final decision of the Commissioner.

Roby sought judicial review under 42 U.S.C. § 405(g). The district court adopted the magistrate's report and recommendation, finding that the ALJ's decision was supported by substantial evidence in the record. Summary judgment was granted for the Commissioner on March 21, 2001. This appeal followed.

## II.

The standard of review is limited to determining whether the Commissioner's findings are supported by substantial evidence, and whether he employed the proper legal standards in reaching his conclusion. *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir.2001) (citation omitted). Even if substantial evidence would have supported the opposite conclusion, the Commissioner's findings must be affirmed if supported by substantial evidence. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir.1996).

The Social Security Act requires the Secretary to follow a "five-step sequential process" for disability claims. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir.1990). First, plaintiff must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. *Id.* (*citing* 20 C.F.R. § 404.1520(b)). Second, plaintiff must show that he suffers from a "severe impairment." A severe impairment is one which "significantly limits ... physical or mental ability to do basic work activities." *Id.* (*quoting* 20 C.F.R. § 404.1520(c)). Third, if plaintiff's severe impairment is expected to last for at least twelve months,

and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. § 404.1520(d). Fourth, the plaintiff's impairment must prevent him from doing his past relevant work. For the fifth and final step, even if the plaintiff's impairment prevents him from doing his past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir.2001). The ALJ's decision in this case was made under the fifth step.

## A. LISTED IMPAIRMENT

Roby argues that the Commissioner erred when it found in step three that his disability did not satisfy the requirements of Listing 1.05(C), which provides:

C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Pt. 404, Sbpt. P, App. 1, § 1.05(C).

■ The claimant has the burden at the third step of the sequential evaluation to establish that he meets or equals a listed impairment. *Evans v. Sec'y of Health & Human Servs.,* 820 F.2d 161, 164 (6th Cir.1987). An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). Unless all the requirements of the listing are present, the claimant does not satisfy that listing. *Hale v.*

*Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir.1987). A review of the medical evidence shows that the ALJ's finding that Roby does not satisfy the listing is supported by substantial evidence.

■ There was no acceptable medical evidence that muscle spasm persisted for at least three months and was expected to last at least 12 months during the closed period. Nor was there acceptable medical evidence that there was persistent, significant limitation of motion in the spine or of appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. Roby points only to findings of his chiropractor for evidence of meeting the requirements of the listing. Acceptable medical sources for establishing an impairment are listed in 20 C.F.R. § 404.1513(a). Although the regulation does not include chiropractors as an acceptable medical source for establishing an impairment, evidence from other sources, including a chiropractor, may be used to show how a proven impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(d).

■ Roby summarily challenges the constitutionality of 20 C.F.R. § 404.1513(a) on due process and equal protection grounds. We ordinarily do not consider issues that have not been fully developed by the briefs or in the record. Issues that are adverted to in a perfunctory manner without some effort at developed argumentation are generally deemed waived. *Gragg v. Ky. Cabinet for Workforce Dev.,* 289 F.3d 958, 963 (6th Cir.2002).

In any event, the question is whether a rational relationship exists between the terms of the regulation and a legitimate governmental purpose. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 34, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) (due process challenge to rule precluding exclu-

sive reliance on x-ray evidence); *Milner v. Apfel,* 148 F.3d 812, 815 (7th Cir.1998) (equal protection rational basis test applies where plaintiff is not member of a protected class). Congress authorized the Social Security Administration to specify the nature and extent of the proofs and evidence needed to establish a right to benefits. 42 U.S.C. § 405(a). Before including a medical profession in the category of acceptable medical sources for proving an impairment, the Social Security Administration conducts a state-by-state analysis of the educational qualifications and other requirements for licensure or certification in order to determine whether that profession is uniformly qualified nationwide. *See* 65 Fed.Reg. 34950–01 (June 1, 2000). The Social Security Administration could have rationally concluded that this regulation serves a legitimate governmental interest by basing determinations of impairment upon uniform and reliable medical evidence.

Even if the chiropractor's records are considered, most of the evidence of spasm pointed out by Roby occurred after the closed period had ended, and he had returned to a heavylifting job shoveling coal. The only evidence of spasm during the closed period to which Roby directs this court's attention was in the chiropractor's records from May 13, 1997, through June 9, 1997, which is less than the required three months. There is substantial evidence in the record to support the ALJ's finding that Roby failed to meet his burden in proving a listed impairment.

## B. Light Work

Roby takes a shotgun approach in presenting scattered, and often undeveloped, arguments on appeal regarding the ALJ's finding that he could perform light work activity. Roby argues that the ALJ incorrectly determined that his and his wife's testimony regarding his limitations, including such things as dizziness and the need to kneel, was overstated and not supported by evidence in the record. A circuit court may not review a determination of credibility. It is up to the ALJ, as the fact finder, to pass upon the credibility of the witnesses and weigh and evaluate their testimony. *See Myers v. Richardson,* 471 F.2d 1265, 1267 (6th Cir.1972).

■ Moreover, the ALJ's findings regarding Roby's limitations are supported by substantial evidence in the record. The ALJ considered Roby's testimony concerning his limitations in light of the medical evidence as well as other evidence that Roby drives a car, mows his lawn, and regularly goes fishing. The ALJ could properly determine that Roby's subjective complaints were not credible in light of his ability to perform these other tasks.

Roby also argues that the ALJ should have found that his pain was so severe as to prevent him from performing even light work. He argues that the ALJ did not perform the proper analysis for disability claims based upon pain as set forth in *Duncan v. Secretary of Health & Human Services,* 801 F.2d 847, 853 (6th Cir.1986). In evaluating subjective complaints of disabling pain, we first determine whether there is objective medical evidence of an underlying medical condition. If there is, we then determine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the disabling pain. *Id.* In addition, because there are situations where pain symptoms may suggest a greater restriction than can be demonstrated by objective evidence, reasonable conclusions as to a claimant's ability to do work activities can be derived from other information in con-

junction with medical evidence. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117–18 (6th Cir.1994).

There was substantial evidence in the record to support the ALJ's determination that Roby's pain was not so severe as to render him disabled. While the medical records reflected that Roby reported pain and tenderness, none of it indicated intense and persistent pain that would prevent Roby from engaging in any work activity. As noted by the ALJ, two of the examining physicians opined that Roby could perform light work activity during the closed period.[1] In addition, Roby's testimony that he regularly mowed the lawn, drove a vehicle, and went fishing is evidence that pain did not prevent him from engaging in any work activity. Regardless of how we might analyze the same evidence, it cannot be said that the decision of the ALJ was unsupported by substantial evidence.

## C. Jobs in the National Economy

■ Roby contends that the ALJ posed a hypothetical question in the fifth step of the sequential process that did not accurately reflect all of his alleged limitations. Specifically, he maintains that the hypothetical question posed should have taken into account such things as dizziness, difficulties with bending, problems with hearing, and nervousness under close supervision. The ALJ is not obliged to incorporate unsubstantiated complaints into his hypothetical. *Stanley*, 39 F.3d at 118. The limitations included in the ALJ's hypothetical contained all the limitations that he found were credibly supported by the record. This argument provides no basis, therefore, to disturb the ALJ's

finding that there were a significant number of jobs available to claimant.

The ALJ concluded that Roby could perform cashier jobs. Roby argues the district court did not give him the benefit of the shifting of the burden of proof in the fifth step when it found that Roby did not prove that he could not make change in a cashier job. In steps one through four, the claimant must prove the extent of his impairment or his Residual Functional Capacity (RFC). In the fifth step, the burden shifts to the Commissioner to prove that work is available in the national economy that the claimant can perform with his proven RFC. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir.1999). The claimant retains, however, the burden to prove his RFC even in step five. *Id.* at 392. Thus, Roby retained the burden in the fifth step of proving that he could not make change. Roby's attempt to distinguish *Her* is without merit.

Roby also argues that we should reverse the Commissioner's decision because there was no evidence in the record to support the ALJ's conclusion that machines compute change for cashiers. Roby offered evidence that he completed the seventh grade. He presented evidence on his reading and writing abilities, but provided no evidence on his math abilities. Under the regulations, if the claimant does not offer evidence of his actual educational abilities, the Commissioner will use his numerical grade level to determine educational abilities. A person with at least a sixth-grade education is considered to have marginal education. Marginal education means ability in reasoning, arithmetic, and language skills needed to do simple, unskilled types of jobs. 20 C.F.R.

---

1. Dr. Bashline opined that Roby's ability to lift, carry, handle objects, and travel on September 12, 1996, was "severely altered." This does not refute the other evidence that

Roby could perform light work even if he could no longer perform the extremely heavy work he performed both before and after the closed period.

§ 404.1564(b)(2). The vocational expert identified cashier jobs as unskilled positions. There was substantial evidence in the record to support the ALJ's finding that Roby could perform cashier jobs regardless of whether machines can compute change.[2]

■ Finally, even if the ALJ erred in finding that Roby could perform cashier jobs, the vocational expert also testified that a person with the hypothetical limitations could perform assembler or mail clerk-type positions. She testified that there were 853,000 suitable assembler jobs in the national economy and 2,000 in the state economy. She identified approximately 63,000 jobs in the national economy for mail clerk-type positions, with about 100 available in the state economy and 7,800 available in Pennsylvania and Ohio. Even if jobs that required the ability to make change are eliminated, there is substantial evidence in the record to support the ALJ's finding that there were significant jobs in the national economy that Roby could perform during the closed period. *See Harmon v. Apfel,* 168 F.3d 289, 292 (6th Cir.1999) (*citing Stewart v. Sullivan,* No. 89–6242, 1990 WL 75248 at *4 (6th Cir. June 6, 1990) (unpublished disposition) (125 jobs in local geographic area and 400,000 jobs nationwide constituted significant number of jobs)).[3]

AFFIRMED.

---

2. The ALJ's hypothetical stipulated no mathematical skills. The expert testified that the hypothetical individual could perform cashier jobs. When Roby's attorney asked whether arithmetic functions were involved in making change for a cashier job, the vocational expert responded that the hypothetical did not include the inability to make change.

3. Roby argues that there was no evidence on the "drive time" with respect to whether there were a significant number of jobs available. The Commissioner is not required to show that jobs exist within a local commuting area. *See Dressel v. Califano,* 558 F.2d 504, 508–09 (8th Cir.1977).