*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0048P (6th Cir.)
File Name: 00a0048p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

YER HER,

     *Plaintiff-Appellant,*

     *v.*             No. 99-1033

COMMISSIONER OF SOCIAL
SECURITY,

     *Defendant-Appellee.*



Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00025—Gordon J. Quist, District Judge.

Argued: December 14, 1999

Decided and Filed: December 16, 1999[*]

Before: MERRITT and SILER, Circuit Judges;
BECKWITH, District Judge.[**]

---

[*] This decision was originally issued as an "unpublished decision" filed on December 16, 1999. On February 1, 2000, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

---

**COUNSEL**

**ARGUED:** Timothy A. O'Rourke, HAY & O'ROURKE, Lansing, Michigan, for Appellant. Kathryn A. Beverly, SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL, REGION V, Chicago, Illinois, for Appellee. **ON BRIEF:** Timothy A. O'Rourke, HAY & O'ROURKE, Lansing, Michigan, for Appellant. Kathryn A. Beverly, SOCIAL SECURITY ADMINISTRATION, OFFICE OF THE GENERAL COUNSEL, REGION V, Chicago, Illinois, for Appellee.

---

**OPINION**

---

MERRITT, Circuit Judge. Administrative Law Judge Paula Zera denied plaintiff Yer Her's request for Social Security disability and Supplemental Security Income benefits, a decision which the Commissioner of Social Security affirmed. After plaintiff's appeal to the District Court, that court also affirmed the decision finding that Yer Her was not disabled. For the reasons laid out below, we AFFIRM the decision of the District Court.

In reviewing the decision of the District Court, we must determine whether the Administrative Law Judge's decision was supported by substantial evidence, which is generally defined as such relevant evidence as a reasonable mind might accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

Plaintiff-appellant Yer Her is presently 39 years old, and was 35 years old at the time of the ALJ's decision. She is

stages one through four, when the claimant is proving the extent of his impairments. If a claimant does not secure an official "Residual Functional Capacity" assessment by a medical or psychological examiner, and simply relies on other evidence to prove his impairments, it does not follow that the Commissioner subsequently must provide the RFC assessment at step five. The step five analysis is meant to determine, given the severity of the impairments already proven, whether there are jobs in the economy which a claimant can perform.

Plaintiff argues that some ambiguous language in *Abbott v. Sullivan,* 905 F.2d 918 (6th Cir. 1990), demonstrates that the burden of proving RFC also shifts to the Commissioner at step five. The pertinent language states that "[a]t this point [step five], the Secretary bears the burden of demonstrating that, notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir. 1990). The *Abbott* case, however, did not specifically address the issue before this court. Taken in context, the language was meant only to emphasize that the burden of proof shifts at step five in order to prove the availability of jobs in the national economy, and should not be read to expand that requirement. To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner. For these reasons, we reject the argument that if Residual Functional Capacity is not proven by the claimant before step five, the burden of proving it shifts to the Commissioner.

For the foregoing reasons, we AFFIRM the opinion of the District Court.

from Laos and is completely illiterate in English. Her's alleged disabilities include hearing impairments, a mood disorder characterized by depression and fear, and a number of mental impairments which Her attributes to a traumatic injury to her head as a child. She was employed from October 1981 to June 1987 on an assembly line preparing donuts, at which time she discontinued that employment in order to care for her two children. At the hearing before the ALJ, plaintiff Her testified through an interpreter. Plaintiff Her testified that she had considerable hearing loss which was only partially aided by hearing aids. In addition, she testified that she could not leave the house alone because she could not remember how to return to her home. Plaintiff Her complained that she often cried two or three times per day, and experienced great depression and fear under normal, everyday circumstances. Finally, Her noted that she experienced blurred vision, back pain, and a pain and "heaviness" in her head, all of which she attributed to the head injury she sustained as a child.

Plaintiff Her's sister also testified on her behalf. She indicated that when the sisters worked in the donut factory, plaintiff Her was unable to independently determine which donuts to glaze and which donuts to fill, and required the regular assistance of her sister in order to complete the job. In addition, Her's sister testified that although Her was able to care for her own grooming needs, she was unable to do housework, cook, or care for her children, and her sister daily undertook these tasks on her behalf.

The ALJ had before her a record replete with medical examinations and analyses of Her's hearing problem. Based on this and on the rest of the evidence, including Her's testimony, she concluded that Her's hearing impairment was severe in nature. The ALJ did not find, however, that Her's alleged mental and emotional impairments were severe. The only medical opinion in the record indicating that Her suffered from disabling mental and emotional impairments was the recommendation of Dr. Bradley that Her receive full disability. There were no other medical opinions in the record dealing with Her's mental and emotional state, aside from a

note from one physician that "depression" could have been one of a number of possible causes for a sudden weight loss Her experienced. Dr. Bradley was not Her's treating physician, and so his opinion was not due any special deference by the ALJ. Indeed, Dr. Bradley's assessment was made only upon the suggestion of plaintiff's attorney. In addition, Dr. Bradley's examination was conducted through an interpreter. His assessment indicated that Her suffered from both auditory and mental hallucinations, that she had hearing impairments and other physical weaknesses, and that she had a Global Assessment of Functioning of 25-30. He did not recommend any further treatment.

The ALJ determined that Dr. Bradley's examination was not wholly credible due to a number of factors. First, Her never complained that she suffered from auditory or mental hallucinations in any other context, including her testimony before the ALJ. This evidence led the ALJ to believe that Bradley could have misunderstood some of Her's responses. Second, the ALJ noted the opinion of psychological experts that psychological testing can never be fully accurate through an interpreter, because it involves many cultural and linguistic nuances that could easily be distorted through the language barrier. Third, the ALJ heard the testimony of a vocational expert who testified after first listening to both Yer Her's testimony and her sister's testimony. Considering all of the testimony, as well as Her's language difficulties, her hearing problems, and her small stature, the vocational expert still concluded that there were a number of light, unskilled, repetitive jobs which Her could perform and which would be less taxing on her than her previous job at the donut factory. The vocational expert also called into question Dr. Bradley's assessment by noting that a Global Assessment of Functioning score under 40 indicates such severe impairment and lack of functioning that hospitalization, or at the very least further treatment, should have been recommended. In this case, the ALJ was startled by the juxtaposition of such an extremely low GAF score, absolutely no recommendation for future treatment or assessment, and Dr. Bradley's prominent request for reimbursement. All of these factors led the ALJ

to reasonably conclude that Dr. Bradley's assessment was not wholly credible, and that plaintiff Yer Her could perform light, unskilled, repetitive jobs, such as folding clothes in a laundry, working as a dishwasher, or working on an assembly line doing repetitive three- and four-step tasks. We believe this conclusion to be based upon substantial evidence.

Plaintiff Yer Her further argues that the Commissioner did not meet his burden of proof once plaintiff proved that she was unable to perform her past relevant work. Specifically, Her argues that the Commissioner should have had the burden of proving plaintiff's Residual Functional Capacity. Disability benefit claims are assessed using an established five-step analysis. As an initial matter, we note that the burden of proof lies with the claimant at steps one through four of the process, culminating with a claimant's proof that she cannot perform her past relevant work. The burden of proof shifts to the Commissioner only if the fifth step, proving that there is work available in the economy that the claimant can perform, is reached. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525 (6th Cir. 1997). The rationale behind this rule is simple. It is thought to be unfair to require a lay claimant to prove that there are no jobs available in the economy which he can perform because such a determination requires a level of expertise in vocational matters. On the other hand, it is not unfair to require a claimant to prove the extent of his impairments. *See Bowen v. Yuckert,* 482 U.S. at 146 n.5 ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.")

Bearing in mind this rationale behind the shifting of the burden of proof in disability cases, we reject plaintiff's contention that once the burden of proof shifts to the Commissioner at step five, the Commissioner is then required to prove a claimant's Residual Functional Capacity. The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is usually made at